1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   MELFORD WILSON,                          CASE NO. 09 CV 219 JLS (WMc)
12                              Plaintiff,    **ORDER (1) GRANTING
                                              PLAINTIFF'S MOTION TO
13           vs.                              DISMISS THE SECOND, SIXTH,
                                              SEVENTH, EIGHTH AND NINTH
14                                            CAUSE OF ACTION; (2)
                                              GRANTING DEFENDANTS'
15   CITY OF SAN DIEGO, a municipal           MOTION FOR SUMMARY
     corporation; SAN DIEGO POLICE            JUDGMENT.**
16   DEPARTMENT; WILLIAMS
     LANSDOWNE, an individual; KEN DAVIS,     (Doc. No. 26.)
17   an individual, and DOES 1-100 inclusive,
18                              Defendant.
19

20           Melford Wilson ("Plaintiff") initiated this action pursuant to 42 U.S.C. § 1983 on February

21   5, 2009.  (Doc. No. 1.)  Plaintiff alleges nine causes of action in his Complaint.  The first five are

22   alleged against Defendant Ken Davis:  (1) False Arrest; (2) Excessive Force; (3) Retaliation; (4) False

23   Imprisonment; and (5) Malicious Prosecution.  (*Id.*)  The remaining four causes of action are against

24   the City of San Diego, the Police Department, and Williams Lansdowne, the Chief of Police:  (6)

25   Failure to Properly Screen and Hire; (7) Failure to Properly Train; (8) Failure to Properly Supervise

26   and Discipline; and (9) *Monell* violations.  (*Id.*)

27           Presently before the Court is Defendants' motion for summary judgment of all causes of

28   action.  (Doc. No. 26.)  Also before the Court is Plaintiff's opposition to the motion and Defendants'

reply.  (Doc. Nos. 37 & 38.)  At oral argument on the motion for summary judgment, the Court granted Plaintiff's oral request to submit additional evidence and further permitted Defendant to file additional evidence in opposition.  Such additional evidence was filed on April 19, 2010 (Doc. No. 40) and April 28, 2010 (Doc. No. 42), respectively.  Further, at oral argument, Plaintiff informed the Court that it did not contest Defendant's motion for summary judgment of the second, sixth, seventh, eighth and ninth cause of action, as confirmed by Plaintiff's motion to dismiss filed after oral argument on April 21, 2010.  (Doc. No. 41.)

The Court **HEREBY GRANTS** Plaintiff's motion to dismiss the second, sixth, seventh, eighth and ninth causes of action.  (Doc. No. 41.)  Accordingly, the only remaining Defendant in the action is Sergeant Ken Davis, and the remaining causes of action are for false arrest, retaliation, false imprisonment, and malicious prosecution.  For the reasons stated below, the Court **HEREBY GRANTS** Defendants' motion for summary judgment as to all remaining causes of action.

**BACKGROUND**

Defendant Sergeant Ken Davis has been employed by the San Diego Police Department for twenty-one years.  (Def. NOL Ex. B ("Davis Decl.") ¶ 1.)  On February 16, 2009, Sergeant Davis was working as an Acting Sergeant in the uniformed Gang Suppression Team ("GST") and on that date had been assigned to the GST for four years. (*Id.*)  At around 9:00 pm that evening, Sergeant Davis observed approximately twelve males outside the home located at 4917 Magnus Way.  (*Id.* ¶ 2; Davis Depo. at 24-25)  Sergeant Davis also observed an illegally parked car and what appeared to be marijuana smoking.  (Davis Decl. ¶¶ 3, 4; Davis Depo. at 24-25.)  Sergeant Davis requested other officers to approach the house with him in order to stop the marijuana activity, check the individuals for outstanding warrants, disperse the group, correct the illegal parking situation, and identify and document any gang members.  (Davis Decl. ¶ 5; Davis Depo. at 26-27, 30.)  This particular area of Magnus was well known for its gang presence. (Davis Decl. ¶ 2.)  Sergeant Davis, however, did not observe any gang signs or distinctive colors at the property or by the individuals.  (Davis Depo. at 32.)

After a brief meeting to discuss their approach of the scene, the officers approached the house with five or six patrol cars. (Davis Depo. at 26-30, 33.)  As the officers approached, some of

the individuals retreated into the garage and the home, shutting the doors.  (Davis Decl. ¶¶ 6, 7.)
None of the officer pursued these individuals.  (*Id.* ¶ 7.)  Sergeant Davis states that, as he
approached the driveway, he could smell the odor of marijuana.  (*Id.* ¶ 7.)  Sergeant Davis also
states that he could detect alcohol on Plaintiff as he spoke.  (*Id.* ¶ 10.)  Plaintiff maintains that he
was not drinking or smoking marijuana, nor did he see or smell marijuana.  (Wilson Depo. at 31.)

Once at the scene, the officers conducted pat-downs of the men remaining outside the
home and garage and found no weapons.  (Davis Depo. at 39-40.)  The officers did find marijuana
that had been tossed underneath a car on the driveway, but the officers did not know who threw it.
(*Id.* at 41-42.)

Shortly after the officers arrived, Plaintiff began to protest the officers' presence.  Sergeant
Davis states that "Plaintiff was angry, belligerent, and screaming profanities at [his] fellow officers
and [himself].  Plaintiff continually called [the officers], 'Mother fuckers.'" (Davis Decl. ¶ 11.)
Plaintiff admits that he called the officers this derogatory term, but then says he immediately
apologized.  (Wilson Depo. at 62.)  Plaintiff also states that he made comments about the City's
budget, that the incident was a waste of his taxpayer's money, and that Sergeant Davis stated that
he was "going to find some reason to take [him] to jail."  (*Id.* at 62-64.)  Sergeant Davis recalls
Plaintiff stating that he was a taxpayer and could speak freely and that the officers were
trespassing (though Plaintiff did not live at that address).  (Davis Decl. ¶¶ 14, 16.)

Plaintiff also states in his deposition that after Sergeant Davis told Plaintiff he was going to
find a reason to arrest him, Plaintiff told him "I don't know what for.  I'm just standing there with
my hands in my pocket minding my own business."  (Wilson Depo. at 64.)  Thereafter, Sergeant
Davis told him to take his hands out of his pocket and to raise his hands, which Plaintiff did.  (*Id.*
at 65)  Then, Sergeant Davis told him to put his hands down, which Plaintiff did.  (*Id.*)  According
to Plaintiff, when he didn't follow Sergeant Davis's next order, Sergeant Davis placed him under
arrest.  (*Id.*)

Sergeant Davis declares that Plaintiff's actions were causing his companions to become
more and more agitated and hostile.  (Davis Decl. ¶ 14.)  At one point, Plaintiff recalls one of his
companions calling Sergeant Davis an "idiot."  (Wilson Depo. at 64.)  Sergeant Davis advised

Plaintiff that once the officers completed their investigation, they would leave. (Davis. Decl. ¶ 13.) Plaintiff refused to calm down, and Sergeant Davis advised him that if he continued to create a disturbance and interfere with the officers' investigation, then he could be arrested. (Davis Decl. ¶¶ 15, 16; Davis Depo. at 73-74.) Sergeant Davis stated that Plaintiff's actions were making it "extremely difficult" for the officers to conduct their interviews, as they could not hear or focus on the interviews given their concerns for safety and the need to continually assess their surroundings. (Davis Decl. ¶¶ 17, 18.) This was especially so given the gang presence in the neighborhood. (*Id.* ¶ 23.)

Plaintiff cannot remember whether Sergeant Davis ever left the driveway area, but Sergeant Davis declares that he walked away from the driveway to see if Plaintiff would calm down, observed the situation for several minutes, and when Plaintiff continued to yell, curse, and berate the officers, re-approached Plaintiff and arrested him for violation of California Penal Code § 148(a)(1)–resisting, obstructing, or delaying a peace officer in the performance of his duties. (Davis Decl. ¶¶ 20-24; Wilson Depo. at 65.)

Sergeant Davis told Plaintiff to turn around, which he did, and Sergeant Davis placed handcuffs on him.[1] (Davis Depo. 77-78.) "After handcuffing the Plaintiff, he initially refused to walk down the driveway with [Sergeant Davis]." (Davis Decl. ¶ 25.) Plaintiff maintains that Sergeant Davis then put his arm around his neck and brought him to the police vehicle, which Sergeant Davis estimates to be about 20 feet from the place of arrest.[2] (Wilson Depo. at 70; Davis Decl. ¶ 27.) Plaintiff was transported to police headquarters and then taken to the San Diego jail. (Davis Decl. ¶ 30.) The City Attorney's Office filed charges against Plaintiff for violation of Cal. Penal Code § 148(a)(1), but the charge was later dismissed.

## LEGAL STANDARDS

### I.   Summary Judgment

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1)

---

[1] There is some dispute as to when and where the handcuffs were placed on Plaintiff, but this dispute is nonmaterial.

[2] Sergeant Davis states that he took Plaintiff by the upper right arm to guide him to the police vehicle. (Davis Decl. ¶ 26.)

09cv219

the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.  *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     42 U.S.C. § 1983**

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method for vindicating federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  The standard for "under color of law" encompasses both government officials and certain private individuals.  *Brentwood Academy v. Tenn Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Further, liability under § 1983 requires causation, that is, the

1   defendants must have actually caused Plaintiff's constitutional deprivation. *Galen v. County of*

2   *Los Angeles,* 477 F.3d 652, 659 (9th Cir. 2007) (quoting *Baker v. McCollan,* 443 U.S. 137, 142

3   (1979)).

4   **III.    Qualified Immunity**

5          Whether a party should be afforded qualified immunity is a question of law.  *Johnson v.*

6   *County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Nunez v. Davis*, 169 F.3d 1222, 1229

7   (9th Cir. 2000).  "[T]he basic purpose of qualified immunity is . . . to spare individual officials the

8   burdens and uncertainties of standing trial in those instances where their conduct would strike an

9   objective observer as falling within the range of reasonable judgment." *Gooden v. Howard*

10  *County*, 954 F.2d 960, 965 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638

11  (1987)).  "The doctrine of qualified immunity protects government officials from liability for civil

12  damages insofar as their conduct does not violate clearly established statutory or constitutional

13  rights of which a reasonable person would have known." *Pearson v. Callahan*, – U.S. —, 129 S.

14  Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).  The test for

15  determining whether a defendant enjoys qualified immunity has two prongs: (1) taken in the light

16  most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

17  violated a constitutional right, and (2) was that constitutional right clearly established in the

18  context faced by the defendant? *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff fails to

19  establish these two prongs, the official is entitled to qualified immunity.  *See Pearson*, 129 S. Ct.

20  at 818 (courts can evaluate either of the two prongs first).

21                              **DISCUSSION**

22          As stated above, the only causes of action subject to the motion for summary judgment are

23  the causes of action for false arrest, false imprisonment, retaliation, and malicious prosecution.

24  **I.    False Arrest and False Imprisonment**

25          Both the false arrest and false imprisonment causes of action are based on the premise that

26  Sergeant Davis lacked probable cause to arrest.  *See Dubner v. City & County of San Francisco*,

27  266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a

28  violation of the Fourth Amendment, provided the arrest was without probable cause or other

1   justification.")  Both also involve the defense that Sergeant Davis is entitled to qualified immunity.

2   Thus, they will be discussed together.

3         Plaintiff asserts that he was "arrested and charged with a crime because he complained to

4   the police that they were wasting tax payers' money by harassing residents who were breaking no

5   laws."  (Opp. to MSJ at 4.)  Defendants, however, contend that Plaintiff was arrested because

6   Plaintiff's behavior "clearly interfered with the ability of the officers to effectively complete their

7   interviews and investigation" and "created a real safety concern for the police officers," thus

8   giving Sergeant Davis probable cause to arrest.  (MSJ at 15.)

9         The first prong for qualified immunity is whether a constitutional violation occurred.  *See*

10  *Saucier*, 533 U.S. at 201.  Both parties agree that an arrest without probable cause is a

11  constitutional violation.  (*See* MSJ at 10 ("Clearly, as a general proposition as arrest without

12  probable cause is a violation of the Fourth Amendment"); Opp. to MSJ at 5.)  Accordingly, the

13  Court must determine whether probable cause existed.  If so, then no constitutional violation

14  occurred.   As explained below, the Courts find that probable cause existed to arrest Plaintiff for

15  "resisting, obstructing or delaying" the officers' investigation in violation of Cal. Penal Code §

16  148(a)(1) and, therefore, Plaintiff has not established a Fourth Amendment violation for false

17  arrest or false imprisonment sufficient to defeat summary judgment.

18        "Probable cause for a warrantless arrest arises when the facts and circumstances within the

19  officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has

20  committed, is committing, or is about to commit an offense.'" *Barry v. Fowler*, 902 F.2d 770, 773

21  (9th Cir. 1990) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also United States v.*

22  *Garza*, 980 F.2d 546, 550 (9th Cir. 1992).  "Law enforcement officers may draw upon their

23  experience and expertise in determining the existence of probable cause.  Thus, seemingly

24  innocent conduct may provide the basis for probable cause when viewed in light of all the

25  information known at the time of the arrest."  *Garza*, 980 F.2d at 550 (citations omitted).

26        Even crediting Plaintiff's version of events, the record shows that Plaintiff shouted

27  profanities at the officers and interfered with the officers' ability to efficiently and effectively

28  complete their investigation.  Plaintiff admits that he called the officers "mother fuckers." (Wilson

1    Depo. at 61.)  Plaintiff also indicates that "people were heckling" and one individual called

2    Sergeant Davis "an idiot."  (*Id.* at 62.)  Plaintiff also describes stating various accusations

3    regarding taxpayer money and budget concerns.  (*Id.* at 63-64.)  Sergeant Davis asserts that this

4    yelling and cursing made it difficult for the officers to hear the responses of the individuals during

5    their interviews.  (Davis Decl. ¶ 18.)  More importantly, however, Plaintiff's actions appeared to

6    incite the others present, making them more hostile and aggressive and causing the officers to

7    continually assess their surroundings and any danger, taking the officers focus off the

8    investigation.  (*Id.* ¶¶ 18, 19.)  Given this evidence, the Court finds that Sergeant Davis, with his

9    21 years of experience on the force and 4 years as part of the GST, had probable cause to arrest

10   Plaintiff for obstructing or delaying the police investigation.[3]  Cal. Penal Code § 148(a)(1); *see*

11   *also Garza*, 980 F.2d at 550.

12        Plaintiff asserts, however, that Sergeant Davis created a pretext for his arrest by asking him

13   to put his hands up, then down, then up again prior to his arrest.  (*See* Wilson Depo. at 64-65.)   At

14   this stage, the Court must credit this version.  However, in his motion and at oral argument,

15   Plaintiff has presented no authority why these statements and actions automatically preclude a

16   finding of probable cause if probable cause otherwise exists.  Instead, Plaintiff's counsel conceded

17   that it did not, but maintained that these statements were relevant to the malicious prosecution and

18   retaliation claims.  Accordingly, this is discussed more below, but is not dispositive of the false

19   arrest and false imprisonment causes of action.

20        Furthermore, even if the Court were to find that these statements created a genuine issue as

21   to whether probable cause existed (which it does not), Sergeant Davis is nevertheless entitled to

22   qualified immunity under the second prong of the qualified immunity analysis.  *See Blankenorn v.*

23   ─────────────

24        [3]  Plaintiff asserts that a significant amount of verbal criticism of police officers is protected
     under the First Amendment, citing *Houston v. Hill*, 482 U.S. 451 (1987), and thus Plaintiff cannot be
25   arrested for this protected speech.  In *Houston*, the Court rendered an ordinance unconstitutional
     because it was not narrowly tailored to criminalize only disorderly conduct or fighting words, and not
26   constitutionally protected speech.  (*Id.* at 463-67.)  Plaintiff in this case, however, is not challenging
     the constitutionality of the law itself, Cal. Penal Code § 148(a)(1), but whether the conduct amounted
27   to probable cause to arrest pursuant to this provision.  Moreover, the facts indicate that Plaintiff was
     not simply exercising his First Amendment rights, but rather was acting in a disorderly manner and
28   was inciting those around him in a well-known gang area, making it reasonable for Sergeant Davis
     to believe probable cause to arrest existed.

1   *City of Orange*, 485 F.3d 463, 475-76 (9th Cir. 2007) (finding that, "even absent probable cause

2   (or if there were a factual issue as to whether probable cause existed), Defendants are entitled to

3   qualified immunity under the second part of the *Saucier* analysis" under the facts of that case).

4          Under the "clearly established" prong of the *Saucier* analysis, if "it would be clear to a

5   reasonable officer that his conduct was unlawful in the situation he confronted," then qualified

6   immunity does not apply.  *Saucier*, 533 U.S. at 202.  But, if "officers of reasonable competence

7   could disagree on th[e] issue, immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335,

8   341 (1986).  In *Saucier*, the Court made clear that whether a constitutional violation occurred is

9   separate from whether the right was clearly established.  Further, "[i]t is important to emphasize

10  that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad

11  general proposition.'" *Brosseau*, 543 U.S. at 198.

12         In the Fourth Amendment context, "it is inevitable that law enforcement officials will in

13  some cases reasonably but mistakenly conclude that probable cause is present, and we have

14  indicated that in such cases those officials . . . should not be held personally liable."  *Anderson*,

15  483 U.S. at 641.  The Ninth Circuit has recognized:

16             It is necessary that police officers be immune when they reasonably believe that probable
               cause existed, even though it is subsequently concluded that it did not, because they cannot
17             be expected to predict what federal judges frequently have considerable difficulty in
               deciding and about which they frequently differ among themselves.
18
19  *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (internal quotation and citation omitted)[4]; *see*

20  *also Bilbrey v. Brown*, 738 F.2d 1462, 1467 (9th Cir. 1984) ("Appellees could therefore qualify for

21  immunity from damages if they reasonably, but mistakenly, believed that they had reasonable

22  cause or probable cause to search appellants.")

23         Accordingly, even assuming *arguendo* that no probable cause existed to arrest Plaintiff, or

24  that there is a genuine issue of material fact as to whether probable cause existed, Sergeant Davis

25  is still entitled to qualified immunity because the Court finds that reasonable officers could believe

26  probable cause existed given the circumstances of the situation Sergeant Davis faced.

27  Specifically, the record indicates that Plaintiff acted in a disorderly manner which incited those

28

---

        [4]  The California Supreme Court declined to follow *Smiddy*, but on other grounds not at issue
in this case.  *See Asgari v. City of Los Angeles*, 15 Cal. 4th 744 (1997).

1   around him a well-known gang area, impeding the officers' investigation and giving an officer a

2   reasonable belief that probable cause existed to arrest Plaintiff for violation of Cal. Penal Code §

3   148(a)(1).

4        Thus, the Court grants Defendants' motion for summary judgment as to the false arrest and

5   false imprisonment causes of action.

6   **II.     Malicious Prosecution**

7        Plaintiff's fifth cause of action is for malicious prosecution pursuant to section 1983.[5]  To

8   prevail on the action, Plaintiff "must show that the defendants prosecuted her with malice and

9   without probable cause, and that they did so for the purpose of denying her equal protection or

10  another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.

11  1995) (citations omitted); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir.

12  2004) (addressing the probable cause and "intent-to-deprive" prongs).

13       A district attorney's decision to file a criminal charge "is presumed to result from an

14  independent determination on the part of the prosecutor" and breaks the causal connection

15  between the officer's actions and the prosecution.  *Awabdy*, 368 F.3d at 1066.  However, malicious

16  prosecution cases may be brought against other law enforcement officers "who have wrongfully

17  caused the charges to be filed."  *Id.* at 1066.  A claim may be made "against state or local officials

18  who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him,

19  concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was

20  actively instrumental in causing the initiation of legal proceedings.  *Id.* at 1067 (citations omitted);

21  *see also Blankenhorn*, 485 F.3d at 482 ("A police officer who maliciously or recklessly makes

22  false reports to the prosecutor may be held liable for damages incurred as a proximate result of

23  those reports" (citation omitted)).

24       The "constitutional right" allegedly denied in the present case is Plaintiff's First

25

26

27

28
_____

     [5]  At oral argument, Plaintiff's counsel conceded that the action was not a state law malicious
prosecution action, and therefore only qualified immunity, not state immunity, was applicable.

09cv219

Amendment right to freedom of speech.[6]  (*See* Opp. to MSJ at 7-8.)  Thus, Plaintiff must show that Sergeant Davis prosecuted him with malice and "for the purpose of denying" him his First Amendment rights.  *Freeman*, 68 F.3d at 1189.  Plaintiff argues that Sergeant Davis' commands to Plaintiff to put his hands up and down and his statement that he was going to find a reason to arrest him creates a genuine issue of material fact as to whether Sergeant Davis acted for the "purpose of denying him" his First Amendment rights.  The Court agrees.  Crediting Plaintiff's version of the events for purposes of summary judgment suggests that, while Sergeant Davis did indeed have probable cause to arrest Plaintiff, he did so not because Plaintiff was impeding the investigation but for the purpose of interfering with Plaintiff's First Amendment rights.  Thus, Plaintiff has sufficiently established the "intent-to-deprive" prong of the malicious prosecution claim.

However, as discussed above, the Court finds that Sergeant Davis had probable cause to arrest Plaintiff despite this evidence under the facts of the case.  Accordingly, the malicious prosecution claim would fail on this ground alone.  *See Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) ("A malicious prosecution claim requires, *inter alia*, a lack of probably cause." (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987))).

Furthermore, Plaintiff does not present sufficient evidence that Sergeant Davis "prosecuted" Plaintiff by "engag[ing] in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings" by the prosecutor, who is presumed to have acted independently in deciding to file charges against Plaintiff.  *Awabdy*, 368 F.3d at 1067.  Pursuant to Cal. Penal Code § 148(a)(1), Sergeant Davis could have either issued a citation or imprisoned Plaintiff for resisting, obstructing, or delaying the officers' performance of their duties.  Sergeant Davis chose to place Plaintiff in jail.  (Davis Depo. at 79.)  This, however, is not evidence of bad faith or wrongful conduct, as the statute gives Sergeant Davis this discretion.

Sergeant Davis also filled out a police report to document the incident and in order to get Plaintiff booked into jail.  (*Id.* at 80.)  The evidence shows no more than this—there is nothing wrongful or in bad faith about Sergeant filling out the police report.  Sergeant Davis at his

---

[6]  Plaintiff contends that he was arrested for speaking out against "the police for the mistreatment he perceived.  He was arrested and prosecuted because he expressed to the officials that multiple patrol cars and uniform officers descending upon a party for an illegally parked car was unfair and racist." (*Id.*)

deposition stated that he filed the police report because he has to document the incident and that whether or not to criminally charge Plaintiff was up to the City Attorney, regardless of whether the officer would like the individual to be charged or not.  (*Id.* at 80.)  Accordingly, the evidence does not support that Sergeant Davis' wrongful actions or bad faith was "actively instrumental in causing the initiation of legal proceedings."  Accordingly, the Court finds that Plaintiff has not sufficiently set forth the elements of a § 1983 malicious prosecution claim, and therefore Sergeant Davis is entitled to summary judgment in his favor as to this cause of action.[7]

**III.    Retaliation**

Plaintiff's third cause of action is for retaliation, alleging that Sergeant Davis arrested him in retaliation for exercising his First Amendment rights and criticizing the officers.  Plaintiff does not specifically address the retaliation claim in his opposition, providing no case law or underlying facts or evidence specifically regarding this claim.[8]  Instead, Plaintiff only briefly states that "[a] reasonable jury could find that the arrest was unlawful and retaliatory based on the disputed facts of the case and Mr. Wilson's assertion that he complied with Davis' orders and was told that Davis would come up with some pretextual reason to place him under arrest."  (Opp. at 6.)  Accordingly, the Court is with little case law and argument as to why summary judgment of this cause of action should or should not be granted.

"As a general matter the First Amendment prohibits government officials from subject an individual to retaliatory actions, including criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To plead a First Amendment retaliation claim, plaintiff must allege that he engaged in constitutionally protected speech and that Defendants retaliated against him because of his speech.  *Id.*  In *Hartman*, "the Supreme Court held that, when a plaintiff claims prosecution in retaliation for an exercise of a First Amendment right, the plaintiff must plead and prove that the defendant lacked probable cause."  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d

---

[7]  Given that the elements have not been met, the Court declines to address whether Sergeant Davis would be entitled to qualified immunity as to this claim, as well.  *See Marullo v. City of Hermosa Beach*, 317 F.App'x 626, 629 (9th Cir. 2008).

[8]  The Complaint also provides little guidance to the Court as to the underlying facts or law of Plaintiff's retaliation claim.  In fact, it is not entirely clear from the Complaint or pleadings whether the retaliation claim was based on the First Amendment, though this was clarified at oral argument that it is in fact a First Amendment retaliation claim.

892, 901 (citing *Hartman*, 547 U.S. at 265-66).  *But see Skoog*, 469 F.3d at 1234 (limiting holding of *Hartman* to only 'retaliatory prosecution claims," not 'ordinary' retaliation claims).

As explained above, the Court finds that probable cause existed to arrest Plaintiff for impeding or delaying the officers which, if nothing more, "ha[s] high probative force" that the officer's actions were not retaliatory.  *Hartman*, 547 U.S. at 265.  The evidence as set forth by Plaintiff suggesting that Sergeant Davis was motivated at least in part by a retaliatory animus does not change this result under the Ninth Circuit case law.  "In *Skoog*, [the Ninth Circuit] held that the retaliatory First Amendment claim survived summary judgment when there was barely enough evidence to conclude that there was probable cause, while there was strong evidence of a retaliatory motive."  *Dietrich*, 548 F.3d at 901 (citing *Skoog*, 469 F.3d at 1225-26, 1231).  The Ninth Circuit in *Dietrich*, however, noted that "[t]here is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions" and that the Court must balance First Amendment rights with "protecting government officials from the disruption caused by unfounded claims."  *Id.*  The Ninth Circuit in *Dietrich* ultimately held that allowing that case to survive summary judgment would "provide almost no protection for government officials" and thus upheld the district court's grant of summary judgment in favor of the government as to Plaintiff's retaliation claim.  *Id.* at 901-02 (citing *Skoog*, 469 F.3d at 1232).

The Court finds significant evidence that probable cause existed to arrest Plaintiff regardless of Sergeant Davis' actions and statements as stated by Plaintiff.  The Court finds insufficient evidence to support Plaintiff's false arrest, false imprisonment, and malicious prosecution causes of action against Sergeant Davis.  The Court further finds a lack of causal connection between Plaintiff's exercise of his First Amendment rights and his ultimate arrest.  *See Skoog*, 469 F.3d at 1231-32 (holding that Plaintiff must prove that Defendants took action to chill or silence Plaintiff's first amendment rights and that this "desire to cause a chilling effect was a but-for cause" of Defendants' actions).  To allow this action to survive summary judgment, therefore, would not strike the appropriate balance between protecting First Amendment rights and protecting "government officials from the disruption caused by unfounded claims."  *Id.* at 1232.  Accordingly, the Court grants Defendants' motion for summary judgment of the third cause of action for retaliation.

09cv219

1    //

2    //

3    //

4    //

5                                         **CONCLUSION**

6          For those reasons, the Court **GRANTS** Defendants' motion for summary judgment in its

7 entirety and dismisses the first, third, fourth, and fifth causes of action.

8          The Court further **GRANTS** Plaintiff's motion to dismiss and dismisses the second, sixth,

9 seventh, eighth, and ninth causes of action.

10          The Clerk shall close the file.

11

12 DATED:  June 1, 2010

13                                   Honorable Janis L. Sammartino

14                                   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv219